Filed 9/16/24  P. v. James CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LANGFORD JAMES, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B330267<br>(Super. Ct. No. 1308167)<br>(Santa Barbara County) |

Langford James, Jr. appeals a judgment following a 2023 resentencing hearing.  (Pen. Code,[1] §§ 1172.7, 1172.75.)  In 2009, James was convicted of residential burglary (§ 459), spousal battery (§ 273.5, subd. (a)), making criminal threats (§ 422), attempted criminal threats (§§ 664, 422), four counts of dissuading a victim (§ 136.1, subd. (c)(1)), with findings that he had a prior serious felony strike conviction and served two prior prison terms.  (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b); *People v. James* (Mar. 8, 2011,

---

[1] All statutory references are to the Penal Code.

B221811) [nonpub. opn.].)  The trial court sentenced him to an aggregate 38 years four months in prison.  In 2011, we affirmed the judgment.  In 2023, the trial court resentenced him to an aggregate 25 years four months and denied his request to strike his 1989 robbery conviction.

We conclude: 1) the trial court did not abuse its discretion by not striking the robbery conviction, but 2) the court erred by not calculating James's custody credits.  We remand to the trial court to calculate his custody credits, and we otherwise affirm.

FACTS

James was married to Tammi.  In October 2008, James walked through the house striking a kitchen pot threatening to "beat [Tammi's] head until the white meat of [her] brain showed." He threatened to "bury" anyone who called police.  (*People v. James*, *supra*, B221811.)

James and Tammi separated, and he left the house. Tammi was the sole signatory on the lease.  On December 10, 2008, James returned and met Tammi outside the house.  They argued and he spit on Tammi and "socked' her in the face.  She ran to the residence and pushed against the door to prevent James from entering.  He entered, pushed Tammi against the wall, and pulled her hair.  (*People v. James*, *supra*, B221811.)

While in jail, James made four calls to "Melvin."  During these conversations, James said, "Something need[s] to be done to that bitch dog," and "I need somebody to go over there and talk to that bitch."  James said, "I'm a [*sic*] kill that bitch," she "a done [*sic*] daughter," and she "better come tell [those] people she [is] lying."  He urged Melvin to "[g]o on over there and see what she say[s]."  Melvin said he would do "whatever [he has] to do."  In a later conversation, Melvin said, "[A]in't [*sic*] nobody supposed to

2

be coming to court," and "them motherfuckers ain't gone [*sic*] show up." In a final conversation, Melvin said, "[W]e ain't gone [*sic*] let them show up, regardless of what motherfuckers gotta [*sic*] do, they ain't gone [*sic*] show up." (*People v. James*, *supra*, B221811.)

Prior to a trial court hearing, a man visited Tammi and stated he had been sent to "make this go away" and advised her not to testify. Tammi was frightened. (*People v. James*, *supra*, B221811.)

James telephoned Tiffany Williams while in jail. He said that although he was not permitted to contact Tammi, he could not "control what somebody that cares about [him] goes and does." He said he would be "alright" if Tammi did not testify in court and it was important to "have somebody out there trying to . . . do stuff for [him]." Tiffany said she would do whatever she could to help. (*People v. James*, *supra*, B221811.)

After a jury trial, James was convicted of residential burglary, spousal battery, making criminal threats, attempted making criminal threats, and four counts of dissuading a victim. The trial court sentenced him to an aggregate 38 years four months in prison. That sentence included two one-year prison term enhancements (former 667.5, subd. (b)) and one five-year prior serious felony enhancement (§ 667, subd. (a)(1)).

Senate Bill No. 136 (2019-2020 Reg. Sess.) became effective on January 1, 2020. It invalidated one-year prison term priors (former section 667.5, subd. (b)), except for sexually violent offenses. In 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) authorized retroactive resentencing for inmates serving invalid enhancements.

On October 19, 2022, the trial court gave notice of a "resentencing eligibility" hearing. James's resentencing brief noted that he was 18 years old when he was convicted of robbery in 1989. (§ 211.) Counsel requested the court to "dismiss the 1989 strike prior allegation in the interests of justice." Counsel said James had no "disciplinary chronos" while in prison, except for one in 2016 for fighting and he has earned "excellent grades" in classes.

The People objected to striking the robbery prior because of James's "lifetime of violence."

The trial court found, "Mr. James is eligible for resentencing pursuant to [section] 1172.75." "The enhancements pursuant to [section] 667.5 [subdivision] (b) are stricken." The court resentenced him and imposed a new aggregate sentence of 25 years four months. It said, "The Court is not going to strike the strike prior. I believe [James] falls squarely within the Three Strikes law."

## DISCUSSION

### *Abuse of Discretion*

James notes his prior robbery was committed when he was 18 and this was a 1989 strike offense. He claims his youth and remoteness of the crime are mitigating factors for striking of the prior under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

"In *Romero*, our Supreme Court warned that it is an abuse of discretion to strike a prior conviction" if ' "guided by a personal antipathy for the effect that the three strikes law would have on [a] defendant," while ignoring "defendant's background," "the nature of his present offenses," and other "individualized

4

considerations." ' "  (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

Remoteness of the crime and youth may be mitigating factors that show the prior offense was an isolated incident or a youthful aberration in the defendant's record.  But where the defendant continues to commit crimes as an adult and his or her record shows a life of crime, these mitigating factors diminish and a court properly denies a request to strike the prior crime. (*People v. Humphrey*, *supra*, 58 Cal.App.4th at p. 813.)

Here the trial court found James falls "squarely within the Three Strikes law" because he "continued to engage in criminal conduct" after his 1989 robbery conviction.  He had "two prior prison commitments in 1994 and then in 2000. . . .  And then there was the current incident . . . , which resulted in significant injury to the victim."  "And while he was in custody, he "took significant steps to attempt to dissuade the victim."  The court also found that "Mr. James has a significant criminal history beginning with the [section] 211 conviction" in 1989.

That finding is supported by James's record, which shows that in 1990 he was convicted of giving a false ID to a police officer and battery.  In 1991, he was convicted of inflicting corporal injury on a spouse.  In 1992, he was convicted of battery. In 1994, he was convicted of writing a check with insufficient funds and bringing a controlled substance into prison.  In 2000, he was convicted of inflicting corporal injury on a spouse and criminal threats.  In 2005, he was convicted of battery and resisting a public officer.  In 2006, he was convicted of possessing a controlled substance in Texas.  In 2008, he was convicted of driving while his license was suspended.  Then in 2009, he was convicted of the current offenses.

5

James notes the trial court referred to the 1989 robbery conviction and said, "[T]he [section] 211 conviction . . . involved the use of a BB gun." The BB gun "would result in significant fear and psychological harm to the victim." James contends the court erred. His accomplice "was charged with personally using a firearm." James admits he was armed with a BB gun, but he notes he was not charged with brandishing or using it in the robbery.

But the trial court's mistake does not diminish the serious nature of this offense. He was an active participant in the robbery and his accomplice used a firearm. "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492.) Here it is not reasonably probable that the court would have stricken the prior given James's record which shows a lifetime of crime. The court gave primary emphasis to his multiple 2009 felonies, the harm to his victim, and it found he falls within the Three Strikes law as a recidivist offender with a "significant criminal history."

James claims that he made a showing of "rehabilitation in prison." But the weight to be given to that showing is determined by the trial court. Here the court could find that showing was outweighed by James's history of violence, his extensive criminal record, his recidivism, and his 2016 violent incident in prison.

*Custody Credits*

The trial court ordered the "[California Department of Corrections and Rehabilitation] to calculate post-sentencing credits" for the period following the original sentence imposed on

December 30, 2009.  But this was error.  The trial court has the duty to calculate the defendant's sentencing credits.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 41.)

DISPOSTION

The case is remanded to the trial court to determine James's custody credits.  The court is to prepare a new abstract of judgment and forward the amended abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

Von N. Deroian, Judge

Superior Court County of Santa Barbara

_____

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.